IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YANEVE FONGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | Civil Action No. 22-332 |
| ) | |
| ) | Magistrate Judge Dodge |
| THE HUNTINGTON NATIONAL BANK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Yaneve Fonge ("Fonge") brings this action against Defendant Huntington National Bank ("HNB"), alleging that HNB provided her with false or misleading information orally and in its initial disclosures, including the estimated taxes and closing costs that she would owe, on which she relied when accepting a mortgage loan offer. Fonge alleges that the actual amounts she was required to pay at closing were significantly higher than as initially represented by HNB. The Amended Complaint alleges claims of fraud/misrepresentation, negligent misrepresentation and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3 ("UTPCPL").

Pending before the Court is HNB's motion to dismiss. For the reasons that follow, the motion will be denied.

**I.  Relevant Procedural History**

Fonge commenced this action on January 12, 2022 in the Court of Common Pleas of Allegheny County, Pennsylvania, naming as the defendant Huntington Bancshares, Inc. ("HBI"). HBI subsequently removed the action to this Court on the basis of diversity jurisdiction and filed a motion to dismiss arguing, inter alia, that HNB (rather than HBI) was the proper defendant.

Thereafter, Fonge filed an Amended Complaint naming HNB instead of HBI. HNB subsequently filed a motion to dismiss (ECF No. 22), which has been fully briefed (ECF Nos. 23, 25, 28). At Fonge's request, oral argument was held on the motion on May 26, 2022. The parties have consented to full jurisdiction before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 15.)

## II.   Relevant Factual Background

On or about March 29, 2021, HNB's predecessor in interest, TCF National Bank ("TCF"), pre-approved Fonge for a mortgage loan. Fonge, a first-time home buyer, began discussions in April 2021 regarding the purchase of a home with Betty Downing ("Downing"), a TCF Senior Loan Officer and VP of Mortgage Lending. Downing told Fonge that her monthly taxes and insurance would be $144.00. When Fonge questioned the accuracy of this figure by stating that she had seen higher taxes on Zillow, a website, Downing responded that Fonge should not trust what she saw on Zillow and that Downing's figures were accurate. On or about May 1, 2021, Fonge placed an offer on the property and entered into an agreement to purchase it. (Am. Compl. ¶¶ 8-17) (ECF No. 16.)

On or about May 26, 2021, TCF provided Fonge with written Initial Disclosures, which provided the same estimate of taxes and insurance of $144.00 per month. In addition, the Initial Disclosures estimated that the closing costs would be $9,888.00. Fonge indicates that she was formally approved for mortgage loan based upon the estimates provided in the Initial Disclosures. On June 14, 2021, HNB, the successor in interest to TCF, provided Fonge with a Closing Disclosure statement, which stated that the estimated taxes and insurance would be $757.93 per month (an increase of $613.93 per month or $221,014.80 over the thirty-year term of the loan) and the closing costs would be $15,857.51 (an increase of $5,969.51). Fonge alleges

that she was legally bound to purchase the property and the closing proceeded as scheduled on June 21, 2021. (*Id.* ¶¶ 18-26 & Exs. A, B.)

**III. Analysis**

A. Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. See also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

3

document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).[1]

"A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). The parties agree that Fonge's claims must be analyzed under Pennsylvania law.

B. Preemption

HNB argues that Fonge's claims are preempted by federal law, specifically, the Truth in Lending Act, 15 U.S.C. §§ 1601-16 (TILA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-17 (RESPA).

The Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, invalidates state law that "interferes with or is contrary to federal law." *Free v. Bland*, 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) (citation omitted). Federal law can preempt state law in three ways: (1) express preemption, (2) field preemption, and (3) conflict preemption. *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

HNB relies upon express and conflict preemption. Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law. *Hillsborough*, 471 U.S. at 713. Conflict preemption nullifies state law inasmuch as it conflicts with federal law, either where compliance with both laws is impossible or where state law erects an "obstacle to the accomplishment and execution of the full purposes and objectives of

---

[1] While HNB has attached to its motion the Sales Agreement for the property between Fonge and the sellers, Fonge's claims are not "based on" this document and therefore it cannot be considered in resolving the motion to dismiss. During oral argument, HNB's counsel made reference to the loan agreement between Fonge and HNB as the contract "at issue" in connection with HNB's argument regarding the gist of the action doctrine. This document is not attached to the Amended Complaint or in the record.

Congress." *Id.* (internal quotation marks omitted). Federal regulations preempt state laws in the same fashion as congressional statutes. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

In every preemption case, the court's inquiry is guided by two principles. First, the intent of Congress is the "ultimate touchstone" of preemption analysis. *Medtronic, Inc., v. Lohr*, 518 U.S. 470, 485 (1996). In discerning this intent, the court should look not only to Congress' express statements, but also to the "structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at 486. Second, we "start[] with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). "[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Lohr*, 518 U.S. at 485. The Supreme Court has referred to this as a "presumption against preemption." *Wyeth v. Levine*, 555 U.S. 555, 566 n.3 (2009). *See Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010).

Here, HNB notes that both TILA and RESPA include provisions regarding their preemptive effect. However, both statutes provide that preemption applies only where there is an actual inconsistency between their provisions and state law, "and then only to the extent of the inconsistency." 15 U.S.C. § 1610(a)(1) (TILA); 12 U.S.C. § 2616 (RESPA).

TILA regulations provide that "if an escrow account will be established," creditors must disclose "an estimate of the amount of taxes and insurance, including any mortgage insurance or any functional equivalent, payable with each period payment." 12 C.F.R. § 1026.18(s)(3)(i)(C). According to HNB, TILA expressly permits creditors to make revisions to good-faith estimates,

including where the revision results in an increase in payment amount. (ECF No. 23 at 9) (citing 12 C.F.R. § 1026.19(e)(3)(iv)(A)). However, the regulation is more specific than HNB acknowledges. It allows for revised estimates in "changed circumstances," which are defined as "an extraordinary event beyond the control of any interested party," "information specific to the consumer or transaction that the creditor relied upon … and that was inaccurate or changed after the disclosures were provided" or "new information specific to the consumer or transaction that the creditor did not rely on when providing the original disclosures." *See also* 12 C.F.R. § 1024.7 (good faith estimates under RESPA). HNB has not argued that its revisions relate to any of these provisions.

HNB also notes that the federally approved disclosure form specifically advises prospective borrowers that tax amounts "can increase." However, as counsel acknowledged at the oral argument, this language appears to be ambiguous: it could mean that taxes on a property can increase over time for a variety of reasons, including a change in its assessed value, or , as HNB contends, a creditor can increase the amount of taxes that must be placed in escrow.

The only case under either TILA or RESPA cited by HNB is *Kajitani v. Downey Savings & Loan Association, F.A.*, 647 F. Supp. 2d 1208 (D. Haw. 2008). In that case, however, the court noted that a regulation in a different section of TILA described states laws that were not preempted because they only incidentally affected lending operations of federal savings associations, such as "contract, commercial, and tort law." *Id.* at 1217. The court concluded that neither the Hawaii state consumer protection statute nor a common law claim of fraud would be preempted because neither purported to regulate any of the matters listed in the statute. Furthermore, the plaintiffs' state law claims in that case were partly based on oral misrepresentations but "TILA addresses the disclosure of certain credit terms in document form

and does not cover oral disclosures." *Id.* at 1220. Therefore, the court concluded that claims based on oral misrepresentations were not preempted. In fact, the only claims that were preempted were those that rested on TILA violations or concerned subject matters explicitly preempted in 12 C.F.R. § 560.2(b). *Id.*

In this case, Fonge does not base her claims on TILA violations or cite any subject matter that is explicitly preempted by a section of TILA. Moreover, Fonge's claims are based on oral representations made to her before the initial disclosures were provided to her, and TILA does not apply to oral disclosures. Thus, the *Kajitani* case does not support HNB's argument.

HNB also relies on *Cinar v. Bank of America, N.A.*, 2014 WL 3704280 (D. Md. July 22, 2014). In that case, the plaintiff alleged that a bank breached its contractual obligations when it charged a separate "Maryland Attorney Fee" in addition to a legal processing fee to account holders whose accounts were garnished. Bank of America contended that the state law claim conflicted with its duties under the Truth in Savings Act (TISA), which "implemented provisions to ensure the clear and uniform disclosure of interest rates and fees. Specifically, TISA listed various rates and fees that must be disclosed and then stated that "a depository institution need not include in such schedule any information not specified in such regulation." *Id.* at *3 (quoting 12 U.S.C. § 4303(a)). Similarly, the court noted that a regulation under TISA stated that "institutions do not need to disclose 'incidental fees, such as fees associated with state escheat laws, garnishment or attorneys fees, and fees for photocopying.'" *Id.* (quoting 12 C.F.R. § 1030 Supp. I, § 1030.4(b)(4)(2)(ii)). The court noted that TISA's implementing regulations specify that they are meant to preempt inconsistent state laws and that this "is consistent with other banking regulations including, for example, Treasury Department regulations on national bank deposit-taking power that states in relevant part that '[a] national bank may exercise its deposit-

taking powers without regard to state law limitations concerning … [d]isclosure requirements.'" *Id.* at *4 (quoting 12 C.F.R. § 7.4007)). The court concluded that the bank was not required by federal law to disclose attorney's fees or expenses. Therefore, the plaintiff's claim would "essentially require the Bank to disclose such attorney's fees in the future, thereby conflicting with the clear intent of Congress to provide uniform disclosure requirements for national banks." *Id.* at *4 (footnote omitted).[2]

Fonge contends that TILA and RESPA do not contain equivalent provisions. HNB cites two cases to support the proposition that "TILA's purpose is achieved by promoting uniformity in credit documents." *Hamm v. Ameriquest Mort. Co.*, 506 F.3d 525, 529 (7th Cir. 2007); *see also Dabney v. Bank of Am. N.A.*, 613 B.R. 225, 240 (Bankr. D.S.C. 2019) (noting that "TILA … establishes uniformity in creditors' disclosures to borrowers.") However, these statements were not made in the preemption context, and, in any event, Fonge is correct that TILA and RESPA do not have regulations of the kind found in TISA.

HNB has not cited, nor has the Court found, any specific provision in TILA or RESPA that would preclude borrowers from raising state law tort or statutory claims challenging alleged changes in disclosures made by banks that might be permitted under federal regulations. Moreover, as noted above, Fonge's claims are based on oral representations provided to her before the written initial disclosures were provided to her and TILA does not apply to oral

---

[2] HNB also cites *Shulick v. PaineWebber, Inc.*, 722 A.2d 148 (Pa. 1998), a case involving Rule 10b of the Securities and Exchange Commission. However, the court in that case concluded that "Federal regulation of order flow disclosure requirements was specifically designed to achieve uniformity in those requirements. To impose additional state requirements on brokers would destroy the uniformity of the federal scheme." *Id.* at 151. That case is distinguishable because the court held that allowing all 50 states to impose their own different disclosure requirements would destroy the uniformity the Act was intended to create. Here, HNB cannot identify any conflict between Fonge's state law claims and either TILA or RESPA.

disclosures. Even if HNB is correct that its revised estimates were permitted under TILA and RESPA, this does not conflict with Fonge's allegation that she relied on the improperly low prior estimates to her detriment, thereby stating claims for negligence and fraud. Moreover, the gravamen of Fonge's Amended Complaint is not that HNB was precluded by state law from making any alterations in the estimates, which is expressly permitted under federal law. Rather, she contends that the first estimate was so low that she was induced to accept it, after which HNB raised it to an amount that would have caused her to decline the loan had HNB revealed it in the first instance. Thus, HNB has not demonstrated that Fonge's state law claims are preempted by TILA or RESPA under either express or conflict preemption and their argument for dismissal based on preemption is rejected.

C. Failure to Plead Misrepresentation and Reasonable Reliance

HNB also argues that Fonge has failed to plead that it made actual misrepresentations, as opposed to estimates, or that she reasonably relied upon them.

"Fraudulent (or intentional) misrepresentation requires the plaintiff to prove six elements: (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 645-46 (Pa. 2021) (citation omitted). "The four elements of a common law claim for negligent misrepresentation are: (1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation." *Id.* at 646 (citation omitted).

While HNB contends that Fonge has failed to allege the misrepresentations with specificity, the Amended Complaint clearly alleges that HNB provided her with estimates of taxes and insurance and closing costs that were unreasonably low. HNB also argues that Fonge did not "reasonably" rely on the estimates, both because she questioned the estimate she was given and because the information was available on public websites. However, according to the Amended Complaint, Fonge relied on what Downing told her, particularly after Downing told Fonge to ignore the information she saw on Zillow. A determination of whether this reliance was reasonable is beyond the scope of a motion to dismiss. Whether it was reasonable of Fonge to rely on the representations of a "Senior Loan Officer and Vice President of Mortgage Lending," who allegedly indicated that she knew more about the subject than Fonge, a first-time home buyer, or an internet website, is yet to be determined. Nor has HNB pointed to any authority to support the argument that, because certain information may be publicly available, Fonge could not reasonably rely on what Downing told her.

Therefore, HNB's contention that Fonge failed to state with specificity the allegedly misrepresentations or sufficient facts relating to reasonable reliance is without merit.

D. Gist of the Action

Finally, HNB moves to dismiss Fonge's claims of negligent misrepresentation and fraud under the Pennsylvania gist of the action doctrine.

In *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014), plaintiff homeowners sued their insurer, Erie Insurance Co., after its adjuster and engineer came to their home to investigate mold that plaintiffs found in their basement and told them that the mold was harmless and had no health consequences. After Plaintiffs followed this advice, they suffered health problems from mold exposure and eventually the house became uninhabitable. Erie paid plaintiffs the sum or

$5,000 that was owed under the insurance policy for testing and attempted remediation of the mold. Plaintiffs then brought an action against Erie for negligence regarding the assurances made by Erie. Erie asserted that their negligence claim was barred by the gist of the action doctrine.

As noted by the Pennsylvania Supreme Court in *Bruno:*

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

106 A.3d at 68 (footnotes and citations omitted).

As the *Bruno* court observed, "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." *Id.* at 69. Finding that plaintiffs were not limited to a breach of contract claim, the Pennsylvania Supreme Court held that while Erie had contractual obligations under its policy, plaintiffs' allegations were not that it failed to perform these duties, but rather, it acted in a negligent manner during the course of fulfilling these duties by making false assurances and recommendations upon which plaintiffs relied. "Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself." *Id.* at 71.

11

HNB has argued that Fonge's claims are based on a a contract between HNB and Fonge for a mortgage loan. It cites *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546 (M.D. Pa. 2010), in which the court examined the provisions of the mortgage loan agreement and Section 2609 of RESPA. The court held that "the relationship between the parties existed only because of the contract between them. Absent this contract—a federally related mortgage loan—the parties would not have had a relationship and Defendant's obligations under RESPA could never have materialized." *Id.* at 554. Because the contract obligated the bank to reasonably estimate the amount of funds due and permitted the creation of an escrow account, the more specific requirements imposed by RESPA attached. "Thus, it appears that Plaintiffs' negligence claim[] arises entirely within the context of the parties' ongoing contractual relationship, and is not merely collateral to that relationship." *Id.* at 555. The court made the same conclusion with respect to the plaintiffs' claims for fraud and negligent misrepresentation. *Id.* On the other hand, the court held that the gist of the action doctrine did not bar the plaintiffs' claim under the UTPCPL. *Id.* at 555-56.[3]

Fonge relies upon oral representations made prior to the signing of the loan agreement. HNB contends that the document contains an integration clause that would preclude her from relying on pre-contractual representations. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 439 (Pa. 2004) (season ticket holders who purchased stadium builder licenses with integration clauses could not plausibly allege that they reasonably relied upon representations

---

[3] However, the court also held that the UTPCPL claim was barred by the economic loss doctrine, relying on the Third Circuit's prediction regarding Pennsylvania law in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002). *Id.* at 556-57. The Third Circuit subsequently disavowed *Werwinski* in *Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021) based on more recent state law cases.

12

made by football team prior to the signing of these agreements because of the parol evidence rule, so their UTPCPL claims were dismissed).

However, the mortgage loan contract is not part of the record. Therefore, a determination regarding this issue cannot be made at this time. In addition, HNB has not raised this argument with respect to Fonge's UTPCPL claim. Therefore, HNB's gist of the action argument is denied without prejudice to renew after the development of a full record.

## IV.    Conclusion

For these reasons, HNB's motion to dismiss (ECF No. 22) will be denied. An appropriate order will follow.

Dated: July 26, 2022                                    BY THE COURT:

                                                        s/ Patricia L Dodge
                                                        PATRICIA L. DODGE
                                                        United States Magistrate Judge